IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MADYUN ABDULHASEEB, )<br>)<br>    Petitioner, )<br>)<br>vs. )<br>)<br>WILLIAM "CHRIS" RANKINS, Acting )<br>Warden )<br>)<br>    Respondent. ) | NO. CIV-21-1016-HE |

## ORDER

Petitioner Madyun Abdulhaseeb,[1] a state prisoner proceeding *pro se*, filed the present habeas petition pursuant to 28 U.S.C. § 2241. He challenges the Oklahoma Pardon and Parole Board's (the "Board") decision to deny him parole or at least the process by which the Board denied it. He seeks an order directing the Board to grant him a personal appearance before the Board and declaring that the Board's application of certain statutes to him violate the Ex Post Facto Clause and/or was in impermissible bill of attainder.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the matter was referred to U.S. Magistrate Judge Suzanne Mitchell for initial proceedings. Thereafter, the respondent moved to dismiss the petition on various grounds. Judge Mitchell has now issued a Report and Recommendation which, though rejecting certain of the procedural arguments offered by respondent, recommends that the petition be dismissed on the merits. Petitioner has objected to virtually everything in the Report, including some aspects of it which were

---

[1] Petitioner was convicted under the name Jerry Lewis Thomas but has apparently changed his name.

favorable to him. His objections trigger *de novo* review of the matters to which objection has been made. Respondent did not object to the Report.

Habeas review under § 2241 is available "if an individual is in custody in violation of the Constitution or laws or treaties of the United States. The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the traditional function of the writ is to secure release from custody." Palma-Salazar v. Davis, 677 F.3d 1031, 1035 (10th Cir. 2012) (quotations and citations omitted). Here, petitioner does not seek immediate release from custody but instead challenges the manner in which the Board has conducted his parole proceedings, essentially arguing that the duration of his custody is being extended as a result.

The Report addressed the matter of the proper respondent in the case. Judge Mitchell applied the rule from Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004) that the proper respondent to a habeas petition is the person who has custody over the petitioner and, as a result, designated the warden of the facility where petitioner is held as the respondent. Petitioner objects to that on various grounds. If it were actually necessary to resolve the question here, the court would likely resolve it on the basis suggested in the Report. But it is not necessary.[2] Appropriate state authorities have appeared and defended against the petition. Further, this court's disposition of the petition, like the Magistrate Judge's ultimate recommendation, does not depend on the identity of the particular respondent. Largely as did the Magistrate Judge, the court concludes the most efficient

---

[2] *Similarly, petitioner objects to a number of other determinations by the Magistrate Judge which do not impact the ultimate disposition of the petition and therefore need not be resolved here.*

resolution of the present petition is to address it on the merits rather than getting bogged down in the intricacies of habeas theory and procedure.

As the Report noted, petitioner appears to assert essentially three claims: He contends (1) the procedures and standards applied by the Board in considering him for parole usurp the legislature's right to establish standards, (2) that application to him of the standards in Oklahoma's aging prisoner parole statute (and others) violate the constitutional prohibition on *ex post facto* laws and/or are an unconstitutional bill of attainder, and (3) that the Board's failure to give him an in-person hearing was an abuse of discretion.

With respect to the "usurpation" argument, petitioner objects to the Report's conclusions but offers no persuasive reason for doing so. To the extent his "usurpation" argument is something separate from the ex post facto argument, it appears to be grounded in some claimed violation of the Oklahoma Constitution — either that the "usurpation" was a violation of separation of powers principles or that the Board was otherwise operating beyond its delegated powers. Either way, the claimed violation is grounded in state law rather than based on a violation of federal rights. As the Report correctly noted, claims of state law violations are not cognizable in a federal habeas action. Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002).

In Oklahoma, "[a] prisoner has no constitutionally protected claim to a release on parole before the expiration of his sentence." Phillips v. Williams, 608 P.2d 1131, 1133 (Okla. 1980) (cert. denied Shabazz v. Williams, 449 U.S. 860 (1980)). The central thrust of petitioner's argument, however, is that the application to him of the current version of

the "aging prisoner statute", 57 Okla. Stat. § 332.21, as well as other statutes, violates the Ex Post Facto Clause of the Constitution.  Specifically, he asserts he was entitled to parole consideration under the "Forgotten Man Act", 57 Okla. Stat. § 332.7 (1971) but, by reason of § 332.21's restriction on parole consideration for specific defined crimes, he is no longer eligible.  As the Report correctly noted, the ex post facto clause generally prohibits retroactively criminalizing an act, increasing the punishment for a crime, or depriving the defendant of a defense that was formerly available to him.  Collins v. Youngblood, 497 U.S. 37, 42 (1990).  In the parole context, the clause has application only to the extent that the changed law or rule being challenged produces more than a speculative risk of increasing the measure of punishment attached to the particular crime.  The mere possibility of increasing the punishment is insufficient in the parole context.  Henderson v. Scott, 260 F.3d 1213, 1216 (10th Cir. 2001) (citing Cal. Dept. of Corrections v. Morales, 514 U.S. 499 (1995) and other cases.)

      Here, petitioner has offered no persuasive, non-speculative reason for concluding his punishment will be increased.  To the extent petitioner's arguments rests on the authority of the Board to grant him a parole, there has been no reduction of the Board's authority.  At the time of his conviction in 1981, the Board had no power to grant paroles at all.  All it could do was recommend parole to the Governor.  57 Okla. Stat. § 332.7 (1971).[3]  As a result, any limitation on the Board's power to grant paroles now does not represent any net "reduction" from what was in place at the time of petitioner's conviction.

---

[3] *This provision was enacted in 1947 and is sometimes referred to as the "Forgotten Man" statute because it mandated that the Pardon and Parole Board consider eligibility for parole*

Petitioner argues that the application of Oklahoma's "aging prisoner" statute, 57 Okla. Stat. § 332.21 to him violates the Ex Post Facto Clause because offenders imprisoned for violent crimes are not eligible for consideration under that statute. Petitioner contends that his crime of first-degree rape was not defined as a violent crime when he was convicted. But application of § 332.21 cannot increase the measure of punishment attached to petitioner's crime. The statute states that upon application for a parole hearing by an aging prisoner, the Board: (1) "may place the prisoner on the next available docket", § 332.21(E); (2) "may grant parole to a prisoner", § 332.21(F); (3) "may use the selected evidence-based risk-assessment instrument to make the determination provided for in subsection F of this section", § 332.21(G); and (4) "may provide the prisoner the opportunity to speak on his or her own behalf and the option of having counsel present at the parole hearing", § 332.21(H). All aspects of the statute are discretionary — it does not increase or decrease petitioner's chance of being paroled over the parole scheme in place at the time of his convictions.

Likewise, petitioner's arguments that the enactment of statutes which define or otherwise use definitions of violent crimes amount to ex post facto laws when applied to him are unpersuasive. Specifically, petitioner contends that the use of 57 Okla. Stat. § 571 (enacted in 1984), *Id.* § 582 (enacted 1989), Oklahoma's Truth in Sentencing Act, 1997 HB 1213 (enacted in 1997), 21 Okla. Stat. § 31.1, and 57 Okla. Stat. § 332.21 (enacted

---

*recommendation as to any eligible prisoner "with or without application being made." 57 Okla. Stat. § 331.7 (1971). It mandated an investigation and report to the Board as to every eligible prisoner "which shall be considered as a basis for consideration of said person for recommendation to the Governor for parole."* Id.

2018) by the Board when considering his parole applications is improper. But the fact that the Oklahoma legislature decided to define or use a definition of violent crime after petitioner's conviction does not materially increase petitioner's punishment for his crime. Any argument that he would be likely to receive parole — or receive an in-person hearing before the Board — if these laws were not applied is mere speculation.[4]

When petitioner was convicted, if eligible for parole he was entitled to have a pardon and parole officer investigate his conduct and record at his place of confinement. That officer would then report to the Board which would then decide whether to recommend to the governor that petitioner be paroled. 57 Okla. Stat. § 332.7 (1971). Part of that investigation would include an evaluation of the reason for confinement, which in petitioner's case was that he was found guilty of "wilfully, knowingly and by means of force, or by means of threats of immediate and great bodily harm accompanied by apparent power of execution, or by both, sufficient to overcome or prevent resistance" committed first-degree rape. Doc. Nos. 1-5 and 1-5. The fact that first-degree rape has subsequently been defined as a crime of violence in Oklahoma does not alter the crime that he committed nor have any chance to increase the likelihood of his time of imprisonment. Any argument to the contrary is mere speculation. When petitioner was convicted, his parole decision would be made by the governor after an appropriate recommendation by the Board. Under

---

[4] *To the extent that petitioner relies on Oklahoma's Constitution, his argument also fails. At the time of his conviction Art. 6, § 10 of the constitution provided that only the governor could grant parole after an appropriate recommendation from the Board. In 2012, that section was amended to give the Board the power to grant parole to nonviolent offenders. This amendment, however, does not result in the likelihood that petitioner will serve a longer sentence.*

current law, his parole decision will be made by the governor after an appropriate recommendation by the board.

To the extent petitioner's focus is on changes in the procedure for parole consideration (i.e., personal appearance before the Board and the like), those do not support an ex post facto challenge either. There was no statutory entitlement to an in-person appearance before the Board at the time of petitioner's conviction. *See* 57 Okla. Stat. § 332.7 (1971). And even if there had been, there is no constitutional entitlement to a particular procedure. Shirley v. Chestnut, 603 F.2d 805, 807 (10th Cir. 1979); Phillips v. Williams, 608 P.2d 1131, 1134 (Okla. 1980) (cert. denied Shabazz v. Williams, 449 U.S. 860 (1980)).

The Board's application of the statutes also does not render the statutes improper bills of attainder. An unconstitutional bill of attainder is "a law that legislative determines guild and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Adm'r of Gen. Servs. 433 U.S. 425, 468 (1977). As noted above, the Board is not inflicting punishment on petitioner absent a trial. He was sentenced to 150 years in prison, and the Board's actions add nothing to that sentence.

Petitioner's abuse of discretion claim also fails. He alleges that the parole processes in place at the time of his conviction and sentencing would have permitted him to have a personal appearance before the Board when he was eligible for parole. But, as discussed above, petitioner had no right to a personal appearance before the Board and no constitutionally protected liberty interest in any particular parole procedure. Thus, the

7

Board did not abuse its discretion when it did not grant petitioner an appearance before the Board to consider his parole.

The court agrees with the Report that petitioner's claims fail on their merits. Accordingly, the court **ADOPTS** the Report and Recommendation [Doc. #28]. Respondent's Motion to Dismiss [Doc. #22] is **DENIED**. The Petition for Writ of Habeas Corpus [Doc. #1] is **DENIED**. Further, the court concludes that a certificate of appealability should not issue because petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

**IT IS SO ORDERED**.

Dated this 18th of August, 2022.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE